Good morning. May it please the Court, Peter Coffman, Deputy Attorney General for the State of California. I'd like to reserve five minutes of my time for rebuttal and for any response to any argument on the cross-appeal. All right. The District Court's jurisdiction was dependent on the validity of United States government decisions treating Big Lagoon Rancheria as an eligible trust beneficiary sovereign. The State presented undisputed evidence that called into question the validity of those decisions. So you're trying to undo the federal government's listing of this group as a recognized Indian tribe? Both that and the decision to take the land the tribe proposes to put a casino on into trust. So there are two actions. The first is treating the tribe as a sovereign. The second is taking land on which the Big Lagoon wants to put its casino into trust. Go ahead. So would you inform us what the difference is between those two challenges? Well, they are related because the part of the decision into whether, after Carcieri, part of the decision as to whether a group is an eligible trust beneficiary is, does involve their status as a tribe in 1934, whether they were federally recognized at that point, whether they were under the jurisdiction of the United States in 1934. So the two questions are related, but they can be separate. So what's the separateness of the taking the land in trust issue? What would be different? What would separate that from the recognition of the tribe? Is it how does the government take land into trust separate and apart? Well, the government can take land into trust for an eligible trust beneficiary tribe or an individual Indian if it meets the standards that the Carcieri court recently said existed. What are you challenging about the taking of the land into trust? Well, there was no, in 1934, the only basis for the tribe, for Big Lagoon to be eligible is if it was a recognized tribe under federal jurisdiction in 1934. The evidence in the record shows that land, there was no land taken in trust for Big Lagoon Rancheria in 1918. The land was acquired by the United States in fee at the request of an individual Indian. And the United States made it very clear at that point on the evidence that's in the record that the land was not taken in trust for the individual, but rather for homeless Indians in general and that that individual would be allowed to stay on the land. He left the land. He died shortly after the land was accepted in fee by the United States. His family lived there for another two years, three years. They moved off. In 1934, no one was living on that nine-acre parcel. But the problem is, isn't there a document, a deed or something that says the land is taken in trust? Well, I'm talking, yeah. Could you go behind that? No. Well, there are two questions here. There are two parcels of property. Right. The first is a nine-acre parcel that was conveyed to the United States in fee. Right. And then there was an 11-acre parcel in the 1980s that was taken in trust for Big Lagoon Rancheria. Under Carcieri, we're talking about the 11 acres. I'm talking about what led up to 1934. Under Carcieri, that 11-acre trust acquisition can be challenged on the basis that Big Lagoon is not an eligible trust beneficiary. Because of their status in 1934. I don't understand this argument. Because if the Federal Government has determined that this land should be taken in trust, how can we say that it wasn't taken in trust if the Federal Government has determined it should be taken in trust and is, has been taken in trust? Well, that's the import of the Patch Act decision that's cited in our brief. The Patch Act has now said that subsequent to land being taken in trust for a tribe actually being put into trust, that trust acquisition can be challenged on the grounds that the Federal Government did not have the authority to take that land into trust because of the status of the tribe in 1934. Can you help me out with something? We don't have any Indies. He did at one point. You have two parcels of land here. And you have the 11 acres, which is the trust property, so to speak. And you have the 9 acres, which has nothing to do with the trust property. All right? It's a fee. It's an owning fee. Now, my sense of this case is that the issue is whether or not the government has to grant land to the tribe. Enter into good faith negotiations on either of these parcels. I mean, is there a discrete issue as to whether we're only talking about the 11-acre parcel or the 9-acre parcel? Or does it really matter in the posture of this litigation? The issue is whether, at least with respect to the 9 acres, there has to be some sort of good faith effort to negotiate. Or am I missing something? Well, under the Indian Gaming Regulatory Act, only a federally recognized tribe with political ‑‑ So the issue is whether this is a federally recognized tribe. Which should be. And that's separate from whether this property was taken in trust as well. Yes. And then the second question ‑‑ So if it's a federally recognized tribe, then I guess the finding is that there has not been good faith negotiations. So why do we have to be concerned about whether the 11 acres was properly taken in trust or not? Well, in order to bring a bad faith negotiation action under the Indian Gaming Regulatory Act, you have to be a properly federally recognized tribe and you have to have land in trust. If the land is not properly in trust and if the tribe is not properly recognized, they wouldn't ‑‑ that tribe, that group would not have standing to bring the bad faith action in the first place. To me, what is the impact of the 9 acres that is not in trust? Is this in relevancy to this case completely? Well, at this point, it is because the issue is negotiations over replacing the casino on the 11 acres. It's only the 11 acres. Correct. So the 9 acres is in relevancy. Correct. I brought it up only because we're talking about what led up to the situation in 1934 where the land is in ‑‑ the 9 acres was vacant. So in order to decide whether the Big Lagoon is an eligible trust beneficiary, you have to know what their status was in 1934. You can't build a casino on the 9 acres. It has to be on trust property. We don't have that question before us right now, but it isn't in trust. It is only in fee. And under IGRA, in order to exercise ‑‑ you have to exercise political authority over trust land. And this land is ‑‑ the title to it is in fee. So that's an arguable question at this point. So you just focus on the 11 acres in trust, so to speak. Correct. So what was the issue before this new court? I mean, wasn't it just, well, not that it was a good kind of negotiation? How did this question of the proper title or recognition enter into the new litigation here? Well, it ‑‑ Was it affirmative defense? I don't understand. Yes, there was an affirmative ‑‑ affirmative defense that there was an issue about whether the 11 acres was an eligible trust property for a casino, for the location of a casino. The district court never addressed that issue at all. Is that your complaint? Well, the district court addressed the question and the error. First, the court did not make a determination whether a suit against the United States was a compulsory counterclaim. Second, the court determined that if we're raising standing, that the state had to raise the standing issue in the course of the negotiations, rather than as a standing defense after the litigation had been filed. And third, the court felt that ‑‑ The court said that part of the good faith obligation would be to raise the standing issue in the context of negotiating with the tribe. Right. The court said that, yes, that if you're going to raise the tribe's standing, you had to raise it in compact negotiations. That's part of the good faith negotiations. Yeah. Unfortunately, though, standing can be raised at any time. It can be raised by the court's sua sponte. So in our view, the court erred in making that determination because standing can be raised at any time. We're talking about the district court's standing. And because standing can be raised at any time, the district court had an obligation to determine whether it really had jurisdiction and could not, especially in this case, where we had no reason to challenge standing until after the Carcieri decision, which came subsequent to the negotiations. Is the United States government, the Department of Interior, whatever, a party to this lawsuit? They're not currently a party to the lawsuit. So I don't quite understand this because how are you trying to tell the federal government that this is not a recognized Indian tribe? They're not even a party to the lawsuit. You prevail. They can still say, we don't care what that court says. This is still a recognized Indian tribe. And then where are you? The government says, go away. And you say, but we have this paper from the court. And they say, so why? I mean, I don't understand why the federal government isn't involved in this somehow. Well, we were trying to get to the point. And that's the point of our, part of our argument here is that the district court said, you know, we were saying we're doing the work necessary to determine whether to bring the federal government into this action on a counterclaim. And we wanted to, before the State of California, this did not take lightly a decision to sue the federal government and believes it has an obligation both as a government and as a litigant to be sure that it has a valid claim before it brings such an action. We were conducting discovery in order to determine that fact, that we had enough evidence to actually file a counterclaim against the United States. You mean to have the government intervene. You think the United States should be sued as a necessary party here in this litigation. No. We would sue them as on the ground to challenge both the, their actions. Is there determination here for this Court to then go after the United States government to say that what we say here is not any part of the government? I don't understand. No. It would be in this, in this action. As part of this action, we would bring them in on a counterclaim so that the, in one lawsuit, we could determine their standing and then ultimately whether the, if they had standing, whether there was bad faith negotiation. The district court said, well, you sat on your hands and that, therefore, I'm not going to give you a continuance to pursue this. The district court didn't say that, Your Honor. The district court didn't say anything in denying the summary judgment motion, didn't say that we had been tardy, that the reason it was denying our Rule 56d motion was because we had been tardy. It didn't say that it was granting summary judgment because we had been tardy in bringing The State says, it does not appear that the State has been reasonably diligent in seeking discovery from the BIA. That's, they were talking about the initiation of, the Court there, Your Honor, was talking about the initiation of discovery. It was not talking about the discovery that the Court allowed the State to pursue. We were prevented from bringing depositions or asking for any additional discovery beyond what we had asked for. But we were, that was not a basis for the Court's denial, grant of the summary judgment, and it was not a basis for Well, it was a reason for denying a 56f, a motion to state the proceedings except discovery. I mean, however you slice it, the Court apparently was of the view that the State had not been diligent in seeking discovery. Well, Your Honor, I From the Bureau of Indian Affairs. With respect, Your Honor, the Court didn't say that in denying Rule 56, their F now, D motion. Its whole argument was that it was irrelevant in the bad faith negotiation suit, it was irrelevant whether the Federal Government's decisions on the 11 acres or on tribal status, where Well, regardless of the context in which the Court said it, it's apparent that for some purpose, for some, the Court was of the view that the State had not been reasonably diligent in seeking discovery from the BIA. So whether it was in the context of the summary judgment ruling, the ruling to state discovery, the ruling for a continuance, there was in the Court's mind the view that the State had not been diligent in pursuing discovery against the Federal Government. Well, you know, with respect, Your Honor, I don't think that played a part in this decision. I think when you look, if you look at the transcript, the Court was struggling with this idea and was asking Big Lagoon, you know, do you really want us not to reach this question about standing in this proceeding? Are you willing to take the chance that I give you, you know, I issue an order compelling further compact negotiations? It turns out if you get a compact then, then it turns out that the tribe, that the land should not have been in trust, and then where are you? Well, here's the problem with that argument. The decision to take the land in trust could have been challenged under the Administrative Procedure Act at the time the decision was made. Well, the issue there, Your Honor, is that Carcieri didn't come down until well after that. That the suit that we would bring is based on Carcieri. Carcieri didn't exist. The standards that the United States Supreme Court created or interpreted didn't exist at that time. We had no knowledge of that. Yeah. But the difficulty is if the acquisition of the land in trust was valid at the time under the law as it was interpreted at the time, how could you go back retroactively and say that the land that was taken in trust was not properly taken in trust? I don't understand how that argument would succeed. I think, Your Honor, that what the Supreme Court said was this is the law then and at that time and now. So with respect, Your Honor, I think that the law, the issue was it wasn't the law because the United States Supreme Court said that the Federal Government didn't have the authority to take the land into trust for a tribe that wouldn't be, that wouldn't be under Federal jurisdiction in 1934. So I think it goes back. It's not perspective only. All right. Let me back up for a second. Big Lagoon Rancheria sues California. Correct? Correct. What for? Why? For bad faith negotiation on the grounds that they're eligible to, they have standing to bring that action. And what was your immediate defense? What was your defense? Our defense was we did negotiate in good faith, and, second, that you didn't have, you weren't an eligible trust beneficiary. When did you bring that up? That was in the answer. In the answer. And when, you weren't an eligible trust beneficiary. And what does that exactly mean? Well, that you don't have land in trust on which you want to put your, the 11 acres that you want to put your casino on is not properly in trust. And you're not a tribe. And when does that get into it? Well, that arose out of the investigation into the status of the, their 1934 status. And that's when you said we need some more time and some more discovery before we go and try to drag the United States government into this? Right. For both issues. But, yes. And as it turns out, that even if we had initiated discovery at the time that we had filed our answer, we would still not have gotten anything given the way the United States has responded to our discovery request. I think that this matter, if it were to go back on remand, the court could very well, we were under a, first, we wanted to be sure we had our ducks in a row. We don't shoot first and ask questions later in bringing a lawsuit. The idea was we would get enough information to determine, to make that challenge. And second, we were mindful of the local rules that said we had to enter into negotiations. And we had to, in good faith, talk to the federal government before bringing a motion to compel. So we, they kept dribbling material into us. And we didn't feel we were in a position to bring a motion to compel under the local rules. And what are you asking us to tell the district court to do? First, that it should determine that the counterclaim against the United States is a compulsory counterclaim. Second, that standing doesn't have to be raised in a compact negotiations. It can be raised for the first time in the litigation. And second, that the other remedy that the court proposed, that the Secretary of Interior could make a determination as to the court's standing or the tribe's standing in its development of gaming procedures, is backwards. Because the Secretary of Interior doesn't get jurisdiction, doesn't have authority to even consider procedures unless the district court in the first instance had jurisdiction to order the compact negotiations that would lead to procedures. Well, but doesn't the federal recognition create a presumption of standing for the tribe? I mean, our cases almost universally say that once a tribe has been federally recognized, that gives the tribe, presumptively, the standing. So why would there have to be an additional finding of standing, then, if nothing has been done to rebut that presumption? Well, those decisions are, contrary to Bigelgun's argument, they are not dispositive. Right. Those actions can be challenged. Baker v. Carr says there's no blanket rule of non-justice stability of the status of a tribe. And the United States v. Sandoval said the United States cannot arbitrarily designate a group as a tribe. That's exactly right. But yet there has to be something in the record to challenge the federal recognition of the tribe. Otherwise, you don't have a standing issue. Right. And we have presented the evidence in the record. We presented it as uncontradicted. But the court was of the view that that did not overcome the federal recognition. Well, with respect, Your Honor, in 1978, the government established acknowledgment regulations and standards, seven standards for a tribe to be federally recognized. This Bigelgun was not put on the list until 1979. Therefore, those standards, the Part 83 standards, apply. There's no indication in the record that the United States utilized those standards in any way or found that Bigelgun met them before putting them on the list. That's an APA argument. Well, I mean, the issue was whether there's any evidence to suggest that there's a question about these about the decision. The second is under the List Act, tribes, if Congress has said a tribe can't be recognized unless it's, is not recognized unless Congress has recognized them, unless there's been acknowledgment under Part 83 or there's been a judicial decision. None of those things happened. What was the sticking point in the negotiations to try to resolve this by agreement? I'm sorry. What were the discussions between the State of California and the tribe to try to settle this thing? What was the sticking point? Why didn't that ever work? Well, let's say, for our view, the, apparently, the sticking point was the, well, it was certainly the revenue-sharing provision and then the environmental mitigation standards that the State was seeking in its negotiations with the tribe. All right. We understand your argument. You've exceeded your time. We'll give you one minute for rebuttal. We'll hear from the other side. All right. Will I have any time for response to cross-appeal also? Oh, the cross-appeal. All of that's included. So we'll give you, we'll look, we'll see how things stand. Thank you. All right. May it please the Court. I am Peter Engstrom. I'm here today with my colleague, Bruce Jackson, although I'll be the only one making an oral argument today. I represent the Appalachee Big Lagoon Rancheria. Your Honors, I'm 52 years old. I've been practicing law for 27 years. I spent 13 years working on this case, nearly half my professional life. And after all that has come before this in terms of litigation, hearings, motions, negotiations, it comes down to this. The State wonders if and hopes that there might be some infirmity in either Big Lagoon's federally recognized tribal status or the tribe's jurisdiction over trust lands eligible for Indian gaming. And the State speculates that maybe somewhere in the distant past, 20, 30, nearly 100 years ago, the United States Government acted arbitrarily or capriciously in recognizing Big Lagoon or taking land into trust. This is not the place, and the district court across the Bay in Oakland was not the place, to resolve these questions. I have to remind that what the State is appealing from is a Rule 56F motion that it made in the district court. Where is the right place and time to raise those issues, if ever? The right place is in Washington, if ever. The right time is within the statute of limitations under the Administrative Procedures Act, which last I checked wasn't 92 years or certainly wasn't the 33 years dating back to 1979 when this tribe was first placed in the federally recognized Indian tribes. This is a jurisdictional issue. Whether or not the property is properly entrusted or not, it's not jurisdictional. It's not jurisdictional in the sense, Your Honor, that the Court took up the issue in response to a Rule 56 motion, Rule 56F. The tribe said, we need a continuance of the summary judgment to conduct discovery. The tribe said? Excuse me, the State. Thank you for correcting me, Your Honor. In the district court, the tribe had previously found the State to be dilatory in pursuing discovery. And in its summary judgment ruling, and it's November 2010 order, the court found that the issues that the State was seeking of discovery of didn't matter because it was undisputed that the tribe is on the list and is a federally recognized Indian tribe. And that even if there were some question about the 11 acres following Karcheri, the tribe had the 9 acres. There was no question about that. On this appeal, in order to establish abuse of discretion by the district court, the State would have to convince you of both those things, both that it was dilatory in pursuing its discovery. I don't think they've done that. They still haven't explained why they waited so long even to start the discovery of the United States. And they'd have to prove to your satisfaction that the evidence they would have discovered in discovery was essential and would have defeated the tribe's motion for summary judgment. I submit they can't do that. Since 1979, this tribe has been listed in the Federal Register in the Department of Interior's list of federally recognized Indian tribes. That list has been reissued and republished 16 times since then, as other tribes get added to it. Every single time the tribe is on it, not once has the State challenged it. In a similar manner, the State hasn't put any evidence in the record, and there is none to suggest, that they timely challenged the taking of land in the trust in 1994. And even if they could make some argument that Karcheri has some impact there, there's nothing to evidence there was any timely challenge to the 1918 determination. There would be no reason to make such a challenge, though. I think you'll agree with that. The State doesn't just walk around reading lists like that for the hell of it and say, I think we're going to challenge this. But if they were going to challenge it, they would have had to do it in a timely manner, not 33 years after the fact, in an IGRA bad faith negotiations case, in which there's never been a question raised like this about a tribe's status. Courts simply look at what the statute 2710D says, and it says, Plain and simple. And that's what District Judge Wilken found. This is an Indian tribe. They have lands eligible for gaming. You haven't suggested to me that there's any genuinely disputed issue of material fact, State. I'm sorry. And by the way, the State, I think we can all agree at this point, the State certainly    They're not going to challenge it. They're not going to challenge it. And they've tried to bootstrap and turn what is essentially a discovery argument under 56F into this novel standing argument. And there's no question about that. They did. And having raised it, one would have thought they should have been diligent about pursuing the discovery to prove up that point. Well, you know, I'm a little confused. If there's such a thing as a jurisdictional issue here, it's one thing. If you're talking about that there is a jurisdictional issue, but they can't raise it because they're late in addressing it and trying to get to the underbelly of it, that seems to be a discrete issue. Which are we talking about here? Well, they would say it's a jurisdictional issue. I think it's a non- It's not a jurisdictional issue. I would say it's a non-issue in the sense that what they want to challenge is indisputable. But if it is an issue, is it a jurisdictional issue or not? They say it is. I'm not sure it is. I will say this. What the statute says is the district court shall have jurisdiction over a cause of action brought by an Indian tribe which has been denied good-faith negotiations. But doesn't that suggest that you have to make a determination that it is an Indian tribe and in this situation that we have to trust God? And the Court did. And the Court did. The Court looked to the Federal government's ---- I don't understand that. You're saying that the issue was never addressed because there was delay and therefore that issue cannot be properly brought before this Court. I'm a little bit confused as to what your position is. I'm sorry. I'm confused by your ---- There was no delay at all. Would your position be different? Or are you saying that we're not at all dealing with jurisdictional issues in this case under any circumstances? If you're talking about the delay from the time that the tribe was first federally recognized? You seem to be suggesting that we don't deal with the jurisdictional issue because, A, there is no jurisdictional issue. But if there is a jurisdictional issue, we can't adjudicate it because the State has not acted properly. I'm a little confused as to what exactly your position is. A jurisdictional issue can be raised at any time. At any time. Yes. Even on appeal, I guess, you know, in the standard jurisdictional law, you can look at the jurisdiction of whether or not the Court should take this case. Right? And in this case, the district court found there is no jurisdictional issue. This is a federally recognized Indian tribe and ---- That's the real issue that the State is trying to litigate. It's trying to say that that's not a correct ---- that's a determination and we have the right, you know, to have a resolution on these issues. Why is that not a correct position? That is the State's argument. But as we've said in our brief and we've cited cases, there's a difference between what is and what someone wants to be. You're saying basically there's no jurisdictional concern yet because the State is bound by the fact that this property was taken in trust many years ago and also that it's registered as the land and that's the end of the question. You can't look behind that. Is that your position? That's the position in this litigation. If they want to go somewhere else, maybe they have a remedy somewhere else. Maybe they can explain through some Administrative Procedures Act. And by the way, they never mentioned the APA until their reply brief. It wasn't until ---- It seems that this is the very opportunity to question whether or not the casino can be built on these lands. And the Court found there is nothing you could uncover in discovery that's going to change the fact that this tribe is on the list. And the case law says that list is dispositive and is beautiful. But, you know, in this particular situation, we don't have to worry about it because they haven't come forward with any evidence sufficient to really litigate that issue. They haven't come forward with it and they either won't find it or this is not the right forum for it. That's what the district court said. What is the right forum? It's not in the courts. It's not in the courts. Casinos can be built and then they're going to go someplace else to say casinos should be torn down. Congress has plenary authority over Indian affairs. Some of that authority has been delegated to the executive branch. There's no case anywhere where a court has taken a tribe off of the federally recognized Indian tribes list. It hasn't happened. We have extensive case law and extensive history clearly delineating the responsibilities and accountability of the executive and the federal branch versus the judicial branch. That's a determination to be made by somewhere else, by someone else at somewhere else. So you're saying, in effect, you're bound by the fact that it was taken into trust back in 1934. We can't look behind that at all in any judicial forum. That has to be something that you vote in Congress for. And then it's Indian land. It's registered Indian land and we can't look behind that either. So that's it. They have to go tackle it administratively. They have to deal with Congress and the executive branch. Whether or not you're really dealing with the tribe as a jurisdictional fact, that can be raised at any time. Yes, it can. And it's not the issue. And the Court has said it's not an issue in this case because there is no evidence, there's no disputed fact. The tribe is listed, period. They said give us all we're doing is asking for more time. And the Court said, you've had your time. I'm sorry. You've been before me forever. This case has been going on for 18 months. Is that an issue for us, whether or not that was a correct determination, that the Court said you had sufficient time and, therefore, while you may have the right, if you were timely to look at these issues, that your time has long since  Is that basically what you're saying? Yes, that's the issue for you under an appeal of Rule 56F. Did the Court abuse its discretion in managing its calendar in having previously had two continuances of the discovery deadline, two continuances of the dispositive motion cutoff, and the Court said, State, you had enough time and you're not going to find anything here, and you've not convinced me you're going to find anything that would somehow lend to some cause of action in this proceeding that would remove this tribe from Federal recognition? Did the Court actually say that, or are you reading words into what the Court did? The Court said in its summary judgment motion, the second part, which is, look, this is a Federally recognized Indian tribe, and there's no question about the nine acres. The first part, the Court said in a previous denial of motion for reconsideration for a continuance. Where the Court said either of those things doesn't matter for purposes of this appeal because it's the State's burden to establish both, both of them, that it was diligent in pursuing its discovery and that the discovery, the additional discovery it wanted would have uncovered facts essential. How does this all induce itself to a discovery dispute? Yes, but for the standing piece. But it is, it's essentially a discovery dispute. It's Rule 56F. They're not contesting that there are disputed facts anymore about whether they negotiated in good faith or bad faith. So the rule, so a discovery dispute can trump the proposition that a jurisdictional question can be raised at any time even on appeal. No, I don't say that, Your Honor. I don't say that. I can't say that. A jurisdictional issue can be raised at any time on appeal. I'm saying there's no basis for that jurisdictional argument, because for 33 years this tribe has been recognized as a Federally recognized Indian tribe. Were you going to argue the cross-appeal at all? Not unless Your Honor's had any questions. If the district court's summary judgment is affirmed, the cross-appeal is moot. Right. And with that, hearing no further questions, thank you, Your Honors. Thank you. Rebuttal? I'll give you a minute, since you don't have to address the cross-appeal. Thank you, Your Honor. I think the question that Judge Block raises is our point on the issue of compulsory cross-appeal or counterclaim. Do you want multiple suits over the question of the Bigelgun status and the status of the land? What Bigelgun is suggesting is that this is a bad-faith suit, just deal with the bad-faith issue and let the state bring an action down the line against the federal government, and we'll see how that turns out. But what you're getting there is three – potentially three suits. You're getting this bad-faith litigation suit, then you're getting a separate suit against the United States in another court with respect to the Bigelgun status and the status of the land. And then assuming – should the State prevail in that case, then there's yet another suit to challenge the operation of a casino, if it were built on the land. I think that's the crux of what we have to deal with here. Well, you know, our dispute is that the Court did not deny the Rule 56 motion based on the State's delay. It said that the question was irrelevant. It didn't matter whether the – It never reached that issue. Correct. So it's not a question of discretion. It's a question of – it's an interpretation of law, whether this issue is irrelevant to the question of standing jurisdiction. A mistake in law can always be an abuse of discretion. Correct. But where was the mistake of law? In finding that the issue of the tribe's status and the status of the land was irrelevant, that, in essence, the placement on the list and the taking the land into trust were dispositive and could not be challenged. They had to be brought in – again, they had to be brought in the negotiations or they would be handled by the Secretary of Interior in a procedures determination. But we can affirm on any basis supported by the record. So if we determine that there was no evidence in the record that would call into question the federally recognized status of the tribe or the status of the land as trust land, why wouldn't that doom your argument? Well, I'd say, you know, in answer to that, Your Honor, what the record shows is absolutely no explanation for how this tribe became to be treated as a sovereign and no explanation as to why this trust acquisition is consistent with Carcieri. They have no – to date, the Federal Government, neither the Federal Government nor Big Lagoon, has been able to explain why. But they don't have to. If there's a presumption that it's a Federal tribe, they don't have to explain. The person who's challenging the status has to successfully show irregularities. Well, I'd say, one, a decision without an explanation is the essence of an arbitrary decision. And, two, we have presented evidence. They haven't – that there's no – nothing in the record to show they complied with Part 83 regulations in putting this tribe on the list, even though the regulations were in effect at the time. There's no demonstration – there's no evidence to suggest that Congress ever recognized them, there was any executive order recognizing them, there's any – again, any compliance with Part 83, or that there was any judicial decision establishing them as a tribe. And the only thing that we have in the record is that an Indian moved on to the Nine Acres in 1918. He didn't become a tribe just by moving on to land. And then the group to which Big Lagoon is currently related, that's an individual who was allowed to camp on the Nine Acres, and then suddenly trespassed and built a cabin on that. Is that the basis for – And that in itself is sufficient to allow you to have more discovery. You do present that information, and that deals with, you know, arguably the presumption otherwise would attach, and do you think that's enough really to authorize you to do that? In a summary judgment motion, inferences and the evidence have to be – we get the benefit of the doubt. Right. If they're material. All right. Thank you. Thank you to both counsels. The case just argued is submitted for decision by the Court. The final case, Moore v. Astro, is submitted on the briefs. That completes our session for today. We'll be in recess until 9 a.m. tomorrow morning. All rise.
judges: Block, Trott, Rawlinson